**In re Anonymous No. 41 D.B. 91**

Disciplinary Board Docket No. 41 D.B. 91.

HEARING COMMITTEE, October 23, 1992—

SUMMARY OF CASE

This petition for discipline was filed by Disciplinary Counsel on April 8, 1991. The petition alleges that respondent, acting as the complainant's attorney in a bankruptcy proceeding, was entrusted with the sum of $100,000 to be used to pay the claims of unsecured creditors; that such monies were properly deposited in a trust account on June 2, 1986; that on December 27, 1988, attorney [A] requested on behalf of the complainant that respondent account for the funds in the trust account; and that no accounting was given until July 14, 1989. Based on those allegations, Disciplinary Counsel contends that respondent violated Rule of Professional Conduct §1.15(b), which requires an attorney holding a clients funds "upon request by the client or third person" to "promptly render a full accounting regarding such property."

Respondent contended that at the time the request for an accounting was made the bankruptcy proceeding had not yet been concluded and that a final accounting would not have been possible; that this fact was promptly communicated to attorney [A] who seemed to be satisfied with that explanation; that in February or March 1989 a handwritten accounting of the status of the account was given to the complainant, who expressed no dissatisfaction; that the bankruptcy was not completed until the end of March 1989; and that a full accounting including a reconciliation of the bankruptcy proceeding and several other outstanding criminal and civil matters pertaining to respondent's representation of the complainant was provided on July 14, 1989.

The Hearing Committee did not find the evidence presented by Disciplinary Counsel sufficient to prove that a violation of Rule of Professional Conduct §1.15(b) occurred, and recommends that the petition for discipline be dismissed.

## STATEMENT OF THE CASE

The single issue involved in this case is whether respondent [ ] promptly complied with attorney [A's] request dated December 27, 1988 that he provide an accounting of funds held in a proper trust account. Rule of Professional Conduct §1.15(b) provides as follows:

"Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive *and, upon request by the client or third person, shall promptly render a full accounting regarding such property.*"

[Respondent] represented the complainant, [B], in a number of civil and criminal legal proceedings from 1985 through 1990. One of those matters involved a previously pending Chapter 11 bankruptcy which involved two of [B's] companies, i.e., The [C] Center and The [D] Landfill.

In May 1986, the landfill property was sold for $1,400,000 with the bulk of the proceeds going to secured creditors. Pursuant to an order of the Bankruptcy Court, a check dated May 27, 1986 in the amount of $100,000 was delivered to [respondent] to hold in trust for payment of the claims of the unsecured creditors. It is undisputed that the $100,000 was placed in a proper trust account; that extensive litigation and negotiation was required to

settle and resolve the claims of the unsecured creditors; and that all payments from that fund were properly made.

The bankruptcy proceeding was not dismissed until late March 1989. A formal accounting of all the proceeds in the trust account, which included a reconciliation of all other outstanding legal matters [respondent] was handling for the complainant, was provided on July 14, 1989.

A hearing on this matter was conducted by the undersigned on November 13, 1991. The Office of Disciplinary Counsel presented the testimony of attorney [A] and submitted the previously taken testimony of the complainant, [B], who was at the time of the hearing incarcerated. The respondent testified on his own behalf and also introduced the testimony of his wife and office manager, [E]. The testimony of the respondent and of the complainant conflicted. Fortunately, attorney [A] acted as a middle-person between the complainant and the respondent throughout the relevant time periods and was a totally disinterested witness. The Hearing Committee found attorney [A] to be candid, forthright, firmly possessed of the facts and completely credible. Thus, the factual findings of the Hearing Committee are in large measure based on the "neutral" testimony of attorney [A], and obviated any need to weigh the credibility of the interested contestants to this proceeding where their testimony was in conflict.

Attorney [A] testified that in December 1988 the complainant was in his office on an unrelated legal matter and requested that he contact [respondent] to obtain an accounting of the $100,000 that was being held in a trust account from the sale of the landfill property. It was pursuant to that request that attorney [A] wrote the December 27, 1988 letter to respondent in which he requested an accounting of those funds. At the time the letter was

written, attorney [A] did not know that the bankruptcy proceeding had not yet been concluded.

Attorney [A] testified that respondent [    ] contacted him by telephone in the latter part of January or the early part of February 1989, and informed him that the bankruptcy had not yet been concluded and that a final accounting could not be provided. Respondent testified that during this phone conversation he also informed attorney [A] that a breakdown of all expenditures paid from the trust account had in fact been provided to [B]. Consistent with the latter contention, [E] testified that she had gone through the canceled checks drawn on the trust account with [B] and had given him a handwritten breakdown of the status of the account. Although attorney [A] could not recall whether he first learned that such an informal accounting had been provided to [B] during the first phone conference with respondent or at some later date, he testified that in one of his frequent talks with [B], (whom he also represented in several unrelated matters), [B] stated that respondent "had written some figures down in handwriting as to what the breakdown was basically ... but there were some moneys being held in escrow because of some debt that had to be paid yet." (N.T. 23) Attorney [A] testified that he knew this informal accounting had been provided to [B] following the December 27 request for an accounting. In response to a specific question, [A] testified that this informal accounting had been given to [B], and that he (*i.e.* attorney [A]) had learned that fact from the complainant, [B]. Thus, attorney [A] knew that after his December 27 letter, and while the bankruptcy was still pending:

"[T]here had been some accounting. Whether it had been in an informal writing or how it had been, I don't know. But I know there was some writing, written, handwritten type of figures given to him." (N.T. 54)

Moreover, the accounting that was provided to [B] disclosed to whom monies in the trust fund had been paid and what monies remained. Thus, attorney [A] testified that:

"[H]e had written some things out and showed him (*i.e.* [B]) where this bulk of money went and what was being held, that type of thing. And I knew, I was aware of that." (N.T. 37)

Attorney [A] testified that he (*i.e.* attorney [A]) voiced no objection when informed by respondent in January 1989 that a full accounting could not be provided until the bankruptcy was concluded; and testified that he would not even have requested an accounting had he known the bankruptcy was still pending. Significantly, attorney [A] testified that respondent never refused to provide the requested financial information and that there was never any "stonewalling of any sort by [respondent]." (N.T. 47) Attorney [A] further testified that he was in agreement with respondent's statement that a full reconciliation of all outstanding financial matters between the complainant and the respondent would be provided when the bankruptcy was concluded, and that he did not think there was an urgent need for an accounting prior to that time.

Attorney [A] also testified that the time within which the final accounting-reconciliation was provided was in accordance with the understanding he reached with respondent during their initial telephone conference; that [B] never expressed any dissatisfaction with him for permitting respondent to take that much time in providing an accounting-reconciliation of the trust funds, and that he never communicated to respondent any dissatisfaction with the time taken to provide the accounting-reconciliation.

Members of the Hearing Committee have reviewed all the evidence and the brief submitted by Disciplinary

Counsel and have conferred by telephone. The committee then reached the decision herein set forth.

## FINDINGS OF FACT

The Hearing Committee makes the following findings of fact:

(1) The respondent, [    ], Esq., was admitted to the practice of law in the Commonwealth of Pennsylvania in 1974. His office is located at [    ].

(2) Respondent has no record of prior discipline.

(3) In or around February 1983, complainant, [B], filed for protection under Chapter 11 of the Bankruptcy Code for himself and his businesses, The [C] Center and The [D] Landfill.

(4) In or about November 1985, respondent was retained to represent [B] concerning his bankruptcy case, which was docketed at no. [    ] of 1983 in the U.S. Bankruptcy Court for the [    ] District of Pennsylvania. On February 13, 1986, the Bankruptcy Court approved such representation.

(5) Throughout the pendency of the bankruptcy proceeding, respondent also acted as counsel for [B] in several other legal matters, both criminal and civil.

(6) On or about May 1986, and as part of the bankruptcy proceeding, the landfill property was sold for $1,400,000 and the sale was confirmed by the Bankruptcy Court.

(7) On May 27, 1986, the Bankruptcy Court ordered the specific distribution of the proceeds of the sale of the landfill property. Pursuant to that order, a check dated the same day in the amount of $100,000 was made payable to respondent. The proceeds of this check were to be held in escrow by respondent for payment of any unsecured creditors of [B].

(8)   On or about June 2, 1986, respondent deposited the $100,000 check to account no. [    ] at [F] Savings & Loan, which was a proper trust account.

(9)   Extensive litigation and settlement negotiations were required to resolve the claims of the unsecured creditors, the great bulk of which claims were resisted by [B]. As a result it was not certain until the very end whether the bankruptcy would be dismissed or converted to a Chapter 7 bankruptcy proceeding.

(10)   In December 1988, [B] conferred with attorney [A] with reference to unrelated legal matters. During that meeting, [B] requested that attorney [A] contact respondent and obtain an accounting of the $100,000 being held in trust pending resolution of the bankruptcy.

(11)   Pursuant to that request, attorney [A] by letter dated December 27, 1988 requested on behalf of [B] that respondent provide "an accounting in relation to all of the funds received as a result of the sale of the landfill and the monies distributed through the bankruptcy proceedings...." At the time this request was made, attorney [A] was not aware that the bankruptcy had not yet been concluded.

(12)   Respondent contacted attorney [A] by telephone in late January or early February 1989, and informed him that a complete accounting could not be provided because resolution of the claims of the unsecured creditors had not been concluded and the bankruptcy was still pending. Respondent told attorney [A] that a full reconciliation of all legal matters between respondent and [B] would be provided following termination of the bankruptcy proceeding. Attorney [A] did not object to that response, and did not indicate that the accounting was a matter of urgency.

(13)   In either February or March 1989, representatives of respondent sat down with [B] and went over all pay-

ments made from the trust fund to the unsecured creditors and set forth the balance remaining in that account. These figures were handwritten on a sheet of paper and given to [B].

(14) Attorney [A] met with [B] after this information had been provided to him, and [B] did not indicate that the information was insufficient for his needs.

(15) Attorney [A] did not believe that respondent was uncooperative, that he ignored or failed to respond to the December 27, 1988 request for an accounting, and did not believe that the respondent was "stonewalling."

(16) There is no credible evidence that any demands for an accounting of the trust account funds were made after the December 27, 1988 request by attorney [A].

(17) The claims of the unsecured creditors were finally resolved in or around March 1989, and the bankruptcy proceeding was dismissed in late March 1989.

(18) By a letter dated July 14, 1989, respondent provided a full accounting of the funds in the trust account. That accounting required going through the files of each unsecured claimant to ascertain the costs and legal fees incurred in contesting and/or settling each claim; and also included a breakdown of the costs and fees incurred in representing [B] in the other pending criminal and civil matters.

(19) It has never been contended that any of the monies in the trust account were improperly dispensed or that the accounting was in any way deficient.

(20) [B] continued to seek respondent's legal assistance after the filing of the instant complaint with the Office of Disciplinary Counsel and has not complained as to the caliber of the legal assistance he received from respondent.

## CONCLUSION OF LAW

The Hearing Committee makes the following conclusions of law:

(1) Attorney [A's] acquiescence to respondent's statement in late January or early February 1989 that the bankruptcy had not been concluded and that a full accounting would be provided after termination of the bankruptcy amounted to a retraction of the request for an accounting made in December 1988 and a request for an accounting within a reasonable time after termination of the bankruptcy.

(2) The handwritten accounting provided to [B] in February or March 1989 was a sufficient accounting of the status of the trust account at that time to satisfy any request for an interim accounting that may in fact have been made.

(3) The formal accounting and reconciliation mailed to [B] and attorney [A] in July 1989 was provided within a reasonable time after termination of the bankruptcy proceeding.

(4) The evidence in the record is insufficient to support the contention that respondent violated Rule of Professional Conduct §1.15(b).

## DISCUSSION

The request for an accounting upon which this petition for discipline is based was made on December 27, 1988, a period when office staffs are typically reduced because of the holidays. The initial response to that request was made approximately one month after the date on which the request was most probably received. Respondent indicated in his testimony that it was difficult to contact attorney [A] during that period. That contention is not corroborated. But, attorney [A] did not consider the re-

sponse to be unduly delayed nor did he believe that respondent was in any way uncooperative or attempting to ignore the request. Thus, we cannot conclude that this delay of approximately one month constituted a violation of the Rules of Professional Conduct.

Moreover, in response to attorney [A's] request, respondent in fact did show [B] all canceled checks drawn on the trust account and gave him a handwritten breakdown of the status of the trust account at that time. Respondent believes that this was done before he was able to contact attorney [A], and attorney [A] believes that this occurred sometime after his initial telephone conference with respondent. But, in any event, this "accounting" of the then current status of the trust account was made available to [B] and there is no indication that either attorney [A] or [B] objected to the sufficiency of that accounting.

The Office of Disciplinary Counsel has provided us with no precedent as to what constitutes an accounting sufficient to satisfy Rule of Professional Conduct §1.15(b). However, we are not prepared at this time to hold that the accounting that was provided, and to which neither attorney [A] nor [B] voiced objection, fell short of what is required of an attorney to whom a request for an accounting in a yet-pending and thus still "fluid" trust matter is made. Moreover, when attorney [A] acquiesced to respondent's statement that the requested accounting could not then be provided but would be provided when the bankruptcy was terminated, there seems clearly to have occurred an implied retraction of the request for an accounting that had been previously made.

Finally, this committee is not prepared to hold that the approximately 3 1/2- month delay from the conclusion of the bankruptcy to the furnishing of the formal ac-

counting-reconciliation was unreasonable. What was involved here was more than a simple totaling of all checks drawn against the trust account and the rendering of a balance. The claims of the unsecured creditors were hotly contested and many resulted in litigation. Thus, the accounting of the trust funds required respondent to go through each of the claim files, pull out all expenses incurred in resolving each claim, and to determine the fee earned in resolving each claim, which was based on a percentage of the difference between the claimant's demand and the amount actually paid to the claimant. Only after those figures were compiled, could an accurate accounting of the trust account be rendered. [E] testified that this involved going through more than three full shelves of files and was a time-consuming task. This evidence was not refuted. [E] also testified that she started this task shortly after the bankruptcy was dismissed, and that this corresponded with the latter stages of her pregnancy; and that she was led to believe that there was no great urgency to perform this task. Attorney [A] corroborated the fact that [B] did not indicate any urgent need for the accounting.

Under the circumstances, this committee does not believe that there is sufficient evidence to find that respondent did not promptly comply with a request for an accounting of the funds in the trust account being held to satisfy the claims of [B's] unsecured creditors or that the respondent in any other way violated the Rules of Professional Conduct.

## RECOMMENDATION

For the foregoing reasons, this Hearing Committee respectfully recommends that the petition for discipline be dismissed.

256

## ORDER

And now, October 23, 1992, upon consideration of the report and recommendation of Hearing Committee [  ] filed August 31, 1992, it is hereby ordered that the charges against [respondent] docketed at No. 41 D.B. 91, be dismissed.